IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| LUIS TORRES, § § **Plaintiff,** § § v. § § ALL ENTITIES DOING BUSINESS § IN THE ASSUMED NAMES AND/OR § THE COMMON NAMES "KIEWIT," § "KIEWIT CORP.," AND "KIEWIT § CONSTRUCTION GROUP, INC.," § KIEWIT NEW MEXICO CO. and § KIEWIT TEXAS CO. § § **Defendant**. § | EP-10-CV-174-KC |

## ORDER

On this day, the Court considered "Defendant Kiewit New Mexico Co.'s Motion for Summary Judgment" ("Motion"), ECF No. 9. For the reasons set forth herein, Defendant's Motion is **GRANTED** in part and **DENIED** in part.

I.   BACKGROUND

Unless otherwise noted, the following facts are undisputed. In August 2008, Kiewit Corp. ("Defendant") began construction of an 18-foot high, 39-mile long section of a concrete-and-steel border fence between the United States and Mexico, stretching between El Paso, Texas and Tornillo, Texas. Def.'s Proposed Undisputed Facts ¶ 2, ECF No. 9-1 ("Def.'s Facts"). The border fence project was divided into segments K2A, K2B, K2C, K2D, and K3. Def.'s Reply to Pl.'s Resp. to Def.'s Mot. for Summ. J. ("Reply") 6, ECF No. 20. Defendant hired Plaintiff on October 16, 2008, to work on the K2A segment of the fence as a heavy equipment operator.

1

Def.'s Facts ¶ 3. Plaintiff's job was to operate a variety of machinery including a track hoe, backhoe, blade, bobcat, loader, dump truck, and flatbed. Pl.'s Factual App. to Resp. to Def.'s Mot. for Summ. J. ("Plaintiff's Facts") 2, ¶ 4, ECF No. 11-1. Plaintiff worked in a "crew" consisting of an operator Gordon Hoff ("Hoff"), a laborer Jose (last name unknown), superintendent Lee Surratt ("Surratt"), and foreman Wesley Bower ("Bower"). *Id.* at 2, ¶ 5. Plaintiff reported directly to Surratt and Bower. Def.'s Facts ¶ 3. Plaintiff worked on various segments of the fence as needed, in addition to his initial work on the K2A segment. Def.'s Facts ¶ 5. According to Plaintiff, at some point in late 2008 Surratt extended him an offer to work for Defendant in Vancouver beginning around February. Pl.'s Facts 2, ¶ 5. However, this job never came to fruition. *Id.*

Plaintiff had no issues working for Defendant until December 22, 2008. *Id.* at 2, ¶ 6. On that day, Plaintiff states that Bower instructed him to borrow a skid-steer, a type of front end loader ("bobcat"), from another crew at the other end of the job site. *Id.* at 2-3, ¶ 6. Plaintiff purportedly received permission from the other crew to use the bobcat, which they were not using. *Id.* at 3, ¶ 6. Plaintiff then drove the bobcat back to the area where his crew was working. *Id.* Shortly thereafter, Plaintiff claims he was confronted by foreman Donald Samuels ("Samuels") and superintendent Brian Bellamy ("Bellamy"), the supervisors of the crew from whom he had borrowed the bobcat. *Id.* at 3, ¶ 7.

According to Plaintiff, Samuels and Bellamy demanded that he get off the Bobcat. *Id.* Plaintiff recounts the following exchange:

> Samuels . . . yelled, "Get the fuck off my piece of equipment, you goddamn Mexican. Get off now." [Plaintiff] responded, "Back off. Let me put the bucket down . . . ." Samuels [then yelled], "Goddamn Mexican, you no speaka Ingles, or

2

> what's your fucking problem?" [Plaintiff then replied that he would get off after putting the bucket down.] Bellamy then came up to the side of the cab and started yelling, "Get the fuck off the goddamn Bobcat, fucking Mexican." [Plaintiff] began to get up when Samuels confronted him again, saying "Don't you understand English, fucking Mexican? Get the fuck off."

*Id.* at 3, ¶¶ 7-9.

Plaintiff then got off the bobcat and Samuels and Bower apparently continued to call him a "fucking Mexican" and stated that he did not know how to use the equipment. *Id.* at 3, ¶ 10.

Plaintiff contends that the dispute lasted between ten and thirty minutes. *Id.* Plaintiff told Bower about the incident and that he would report the incident to human resources. *Id.* at 4, ¶¶ 11-12. Plaintiff left immediately to the human resources office and reported the incident to human resources representative Millie Gaytan ("Gaytan"). *Id.* at 4, ¶ 14. Gaytan called the project manager over and they informed Plaintiff that the supervisors would meet to resolve the situation. *Id.*

Plaintiff went home and returned to work the next day on December 23, 2008. *Id.* at 5, ¶ 17. Defendant then took a scheduled holiday break from December 24, 2008, until January 2, 2009. *Id.* Plaintiff's crew returned to work January 2, 2009, despite not being scheduled to work until January 10, 2009. *Id.* at 5, ¶ 17. On January 3, 2009, Defendant terminated Plaintiff's employment. *Id.* Defendant claims that segments K2A, K2D, and K3 were substantially complete as of January 2009, leaving only the K2B and K2C segments to be completed, and resulting in a need to reduce the workforce. Reply 6. Plaintiff contends that after he was terminated from employment, "there were crews working and there was a lot of work to be done." Pl.'s Facts 5, ¶ 18.

Plaintiff states that Hoff was the only other person he could identify as having been laid

off on that day. *Id.* According to Defendant, approximately 150 employees were laid off the week before and the week after Plaintiff was laid off, including 100 employees the week of January 3, 2009. Def.'s Facts ¶ 8. Defendant further claims that thirty of the 100 employees laid off that week were equipment operators like Plaintiff. *Id.* Defendant states that it retained twenty-five of the eighty operators from K2A, K2D, and K3 at the time of Plaintiff's layoff. Reply 6. According to Defendant, Jason Zumbrunnen ("Zumbrunnen"), the job superintendent responsible for the layoffs at issue, considered individuals' seniority with Defendant as well as input from field superintendents in deciding which equipment operators to retain. *Id.* Plaintiff purportedly had less seniority than the operators who were retained and lacked experience as a blade operator on other jobs with Defendant. *Id.* Plaintiff, on the other hand, claims that he was fired as a result of the December 22, 2008, incident coupled with his decision to report it to human resources. *See* Pl.'s Resp. to Def.'s Mot. for Summ. J. ("Plaintiff's Response") 7, ECF No. 11.

Plaintiff received a Dismissal and Notice of Rights from the Equal Employment Opportunity Commission ("EEOC") around September 28, 2009. Def.'s Facts ¶ 12. Plaintiff also received a Notice of Right to File a Civil Action from the Texas Workforce Commission, Civil Rights Division, around October 6, 2009. *Id.* ¶ 13. On January 5, 2010, Plaintiff filed suit against Defendant. Def.'s Notice of Removal Ex. B ("Plaintiff's Petition"), ECF No. 1-4. Plaintiff brought claims for race and national origin discrimination under the Texas Commission on Human Rights Act ("TCHRA") and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 ("Title VII"). *Id.* at 2-3. Plaintiff further alleged claims for hostile work environment based on race or national origin under 42 U.S.C. § 1981 and retaliatory discharge

under Title VII and § 1981. *Id.* On March 30, 2011, Defendant filed the Motion seeking summary judgment on a number of Plaintiff's claims. Mot.

## II. DISCUSSION

### A. Standard

Summary judgment is required "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quoting *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (per curiam)). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 189 (5th Cir. 1996).

"[The] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *Wallace v. Tex. Tech. Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996). To show the existence of a genuine dispute, the nonmoving party must support its position with citations to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials[,]" or show "that the materials cited by the movant do not establish

the absence . . . of a genuine dispute, or that [the moving party] cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c). The court resolves factual controversies in favor of the nonmoving party; however, factual controversies require more than "conclusory allegations," "unsubstantiated assertions," or "a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Further, when reviewing the evidence, the court must draw all reasonable inferences in favor of the nonmoving party, and may not make credibility determinations or weigh evidence. *Man Roland, Inc. v. Kreitz Motor Express, Inc.*, 438 F.3d 476, 478-79 (5th Cir. 2006) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). Thus, the ultimate inquiry in a summary judgment motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

      **B.     Title VII and TCHRA Claims**

Defendant argues that Plaintiff's Title VII claims for race and national origin discrimination, retaliatory discharge, and race and national origin discrimination under the TCHRA are time-barred. Def.'s Mot. 3. Plaintiff agrees and adds that this suit should only proceed under 42 U.S.C. § 1981. Pl.'s Resp. 2.

A plaintiff must file a Title VII claim within ninety days of receiving a "right to sue" notice from the EEOC. 42 U.S.C. § 2000e-5(f)(1). In addition, a plaintiff must file a TCHRA claim within sixty days of receiving a "right to sue" notice from the Texas Workforce Commission. Tex. Lab. Code Ann. § 21.254.

Here, Plaintiff received a "Dismissal and Notice of Rights" from the EEOC around September 28, 2009 and a "Notice of Right to File a Civil Action" from the Texas Workforce

Commission around October 6, 2009. Def.'s Facts ¶¶ 12-13. Plaintiff did not file this lawsuit until January 5, 2010. Def.'s Notice of Removal Ex. B. More than ninety days elapsed between the receipt of the EEOC notice and the filing of this lawsuit, and more than sixty days elapsed between the receipt of the Texas Workforce Commission notice and the filing of this lawsuit. Therefore Plaintiff's Title VII and TCHRA claims are time-barred. *See Taylor v. Seton Brackenridge Hosp.*, 349 F. App'x 874, 876 (5th Cir. 2009) (citing *Espinoza v. Mo. Pac. R.R. Co.*, 754 F.2d 1247, 1251 (5th Cir. 1985)); *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 660 (Tex. 2008).

The Court grants summary judgment with respect to Plaintiff's Title VII and TCHRA claims.

### C. Hostile Work Environment

Plaintiff contends that he was subjected to a hostile work environment due to comments made to him by Defendant's employees in violation of § 1981.[1] Pl.'s Resp. 1. Defendant counters that a hostile work environment cannot be established because the harassment Plaintiff complains of is not sufficiently severe or pervasive to alter a term, condition, or privilege of employment. Def.'s Mot. 4-6.

To make a prima facie showing of hostile work environment, a plaintiff must show: (1) he belongs to a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his membership in the protected class; (4) the harassment affected a

---

[1] Because claims for hostile work environment under § 1981 are analyzed under the same standard as claims for hostile work environment under Title VII, *Hernandez v. Yellow Transp., Inc.*, 641 F.3d 118, 123 (5th Cir. 2011), the Court cites law addressing claims for hostile work environment in the Title VII context.

7

term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take adequate remedial action. *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005). Where, as in this case, the alleged harassment is perpetrated by a supervisor with immediate or successively higher authority, the employee need only satisfy the first four elements set forth above. *See Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999).

To affect a term, condition, or privilege of employment, the harassing conduct "must be sufficiently severe or pervasive." *Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003). "Discourtesy or rudeness, 'offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in terms and conditions of employment.'" *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 264 (5th Cir. 1999) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998)). The "'mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee' does not affect the terms[,] conditions, or privileges of employment to a sufficiently significant degree.'" *Jones v. Flagship Int'l*, 793 F.2d 714, 720 (5th Cir. 1986) (quoting *Rogers v. E.E.O.C.*, 454 F.2d 234, 238 (5th Cir. 1971)). In determining whether a hostile work environment exists, courts assess the totality of the circumstances, including: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with an employee's work performance. *Frank*, 347 F.3d at 138.

Here, Plaintiff's claim for hostile work environment is based on his ten to thirty minute altercation with foreman Samuels and superintendent Bellamy. Plaintiff specifically cites

8

Samuels and Bellamy's repeated use of the words "goddamn Mexican" and "fucking Mexican" during that time span. Pl.'s Resp. 2. Because it is dispositive, the Court addresses the fourth factor required to establish a claim for hostile work environment, whether the harassment affected a term, condition, or privilege of employment.

The facts of this case, though inexcusable and offensive, are not sufficiently severe or pervasive as to alter the conditions of Plaintiff's employment. The incident Plaintiff claims occurred is not frequent; in fact, it only occurred on one occasion. There is no evidence that the racial comments made to Plaintiff interfered with his work performance, nor were the comments physically threatening. While such comments are severe and humiliating, the Fifth Circuit has found that such isolated racial comments do not alter the terms, conditions, or privileges of employment. *See, e.g.*, *Hernandez*, 641 F.3d at 125-26 (spoken comment and poster, both of which were derogatory toward Mexicans, while offensive did not rise to the level of severe or pervasive to constitute hostile work environment); *Cain v. Blackwell*, 246 F.3d 758, 760-61 (5th Cir. 2001) (finding the use of racial epithets related to the plaintiff's having dated a black man not sufficiently severe or pervasive to constitute hostile work environment); *Harillal v. Univ. Health Sys. Dev. Corp.*, 174 F.3d 197, at *4 (5th Cir. 1999) (unpublished) (noting that isolated uses of "wetback" and "illegal alien" were not sufficiently severe to create a hostile work environment); *see also Adams v. B & B Rests., Inc.*, No. H-07-1352, 2008 WL 4155458, at *4 (S.D. Tex. Sept. 4, 2008) (noting that isolated use of "fuck you" and "nigger bitch" without physical threats was not sufficiently severe to create a hostile work environment).

Plaintiff has not shown conduct that is sufficiently severe or pervasive as to alter the terms, conditions, or privileges of employment. Therefore, the Court grants summary judgment

9

with respect to Plaintiff's claim for hostile work environment.

### D. Retaliation

Plaintiff alleges he suffered unlawful retaliation when he reported the confrontation involving the bobcat to human resources and was subsequently fired. *See* Pl.'s Resp. 7. Defendant counters that Plaintiff cannot make a prima facie case because he cannot show causation, and that even if he could, he has failed to show that Defendant's purportedly legitimate, non-retaliatory reasons for termination were pretextual. Mot. 6-10.

The *McDonnell Douglas* burden shifting framework applies to retaliation cases. *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998). If a plaintiff sets out a prima facie case of retaliation, then the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for its employment action. *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 484 (5th Cir. 2008) (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007)). If the employer meets this burden of production, then the plaintiff bears the burden of showing that the employer's reason is a pretext for the actual retaliatory reason. *Id.*

#### 1. Prima facie case

To make a prima facie case of retaliation, a plaintiff must show: (1) that he or she participated in a protected activity; (2) that his or her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the materially adverse action. *Id.* (citing *McCoy*, 492 F.3d at 557). Defendant contends that Plaintiff has not engaged in a protected activity, and that no causal connection exists between a potentially protected activity and the materially adverse action. Mot. 6-10.

##### a. Protected activity

Defendant argues in a footnote that Plaintiff did not engage in a protected activity because he did not report any racial slurs or comments regarding his national origin to Gaytan, nor did he claim that Samuels and Bellamy's conduct toward him had anything to do with his race or national origin. Mot. 7 n.23. However, Plaintiff states in his deposition that he communicated the details of the incident that occurred on December 22, 2008, to Gaytan and that Gaytan assured Plaintiff that supervisors would meet and resolve the situation. Pl.'s Facts ¶ 14.

Therefore, Plaintiff has submitted evidence that he engaged in a protected activity when he reported the incident to Gaytan. *See* 42 U.S.C. § 2000e-3(a) (prohibiting an employer from discriminating against an employee based on an employee's opposing an illegal practice under Title VII); *Carrera v. Commercial Coating Servs. Int'l, Ltd.*, No. 10-20490, 2011 WL 1439918, at *4 (5th Cir. Apr. 14, 2011) ("[c]omplaining to supervisors about racial harassment is a protected activity") (citing *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427-28 (5th Cir. 2000)).

### b.     Causation

Defendant contends that Plaintiff cannot establish causation between the complaint and termination because Zumbrunnen was unaware of Plaintiff's complaint to Gaytan when Zumbrunnen made the decision to terminate Plaintiff. Mot. 8. Plaintiff counters that the temporal proximity between the protected activity of reporting the incident and the adverse employment action of his firing is sufficient to show a causal connection. Pl.'s Resp. 4-5.

"'Close timing between an employee's protected activity and an adverse action against [him] may provide the 'causal connection' required to make out a prima facie case of retaliation.'" *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir.2001) (quoting *Swanson v.*

*Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir.1997)). In fact, "a time lapse of up to four months has been found sufficient to satisfy the causal connection for summary judgment purposes." *Id.* (quotation omitted).

Here, the protected activity of reporting a confrontation with supervisors occurred on December 22, 2008. Pl.'s Facts 4, ¶ 14. The adverse employment action was taken on January 3, 2009, when Plaintiff was fired. *Id.* at 5, ¶ 17. The time lapse between the protected activity and the adverse employment action is less than two weeks. Furthermore, when considering the fact that Defendant scheduled holiday vacation for its employees between December 24 and January 2, the time lapse between the incident and the firing only amounts to two work days. It is hard to envision a more pertinent scenario where temporal proximity itself establishes a causal connection. *See Evans*, 246 F.3d at 354.

Accordingly, the Court finds causation between Plaintiff's protected activity, reporting the incident in question to Gaytan, and the materially adverse action, his termination.

### 2. Legitimate, non-retaliatory reason

Since Plaintiff has made a prima facie showing of retaliation, the Court next considers whether Defendant has offered a legitimate, non-retaliatory reason for terminating Plaintiff. *See Aryain*, 534 F.3d at 484 (citing *McCoy*, 492 F.3d at 557).

Here, Defendant has offered evidence that Plaintiff was terminated as part of a reduction in force due to the completion of portions of the project. Defendant contends that segments K2A, K2D, and K3 were substantially complete as of January 2009, leaving only the K2B and K2C segments to be completed, and resulting in a need to reduce the workforce. Reply 6. Furthermore, Defendant submits evidence that approximately 150 employees were laid off the

week before and the week after Plaintiff was laid off, including 100 employees the week of January 3, 2009. Def.'s Facts ¶ 8. Defendant also asserts that thirty of the 100 employees laid off that week were equipment operators like Plaintiff. *Id.* Defendant claims that it retained twenty-five of the eighty operators from K2A, K2D, and K3 at the time of Plaintiff's layoff. Reply 6. According to Defendant, Zumbrunnen considered individuals' seniority with Defendant as well as input from field superintendents in deciding which equipment operators to retain. *Id.* Plaintiff supposedly had less seniority than the operators who were retained and lacked experience as a blade operator on other jobs with Defendant. *Id.*

It is well established in the Fifth Circuit that a reduction in force is a legitimate reason for terminating an employee. *See e.g.*, *Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 755 (5th Cir. 2005) (noting that a company-wide ten percent reduction in force is a legitimate, non-retaliatory reason); *E.E.O.C. v. Tex. Instruments Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996) (noting that a reduction in force is in itself a legitimate, non-discriminatory reason).

Defendant has offered a specific, legitimate, non-retaliatory reason for why Plaintiff was terminated. Therefore, Plaintiff must show that Defendant's legitimate, non-retaliatory reason for terminating Plaintiff is pretextual for the true, retaliatory reason. *See Aryain*, 534 F.3d at 484.

### 3. Pretext

Plaintiff offers various reasons for why Defendant's legitimate, non-retaliatory reason for termination is pretextual. Pl.'s Resp. 8-9. However, because it is dispositive, the Court addresses only whether Plaintiff has shown pretext in light of the fact that he was fired as opposed to transferred to the position he was offered in Vancouver.

In determining whether a plaintiff has shown pretext, the Court's job is "not to engage in

second-guessing of an employer's business decisions." *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007). "Our anti-discrimination laws do not require an employer to make proper decisions, only non-retaliatory ones." *Id.* (citing *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991)).

Here, Plaintiff argues that a localized reduction in force at the border fence project fails to explain why Plaintiff was terminated because he had accepted another position working for Defendant in Vancouver. *See* Pl.'s Resp. 8. Plaintiff has presented evidence that Surratt approached him at some point in 2008 with an offer to work for Defendant in Vancouver in February 2009, which he accepted. Pl.'s Factual App. to Resp. to Def.'s Mot. for Summ. J. Ex. A, at 21:4-12, ECF No. 11-2. If Defendant's true reason for terminating Plaintiff were a reduction in force at the border fence project, then, according to Plaintiff, he would not have been terminated; rather, he would have begun work in Vancouver. *See* Pl.'s Resp. 8. The Court finds that Plaintiff has offered evidence to show that Defendant's legitimate, non-retaliatory reason for terminating Plaintiff, a reduction in force, is a pretext. *See Palmer v. PSC Indus. Outsourcing, L.P.*, No. H–09–3194, 2011 WL 1230206, at *9 (S.D. Tex. Mar. 30, 2011) (the plaintiff showed the defendant's reason for terminating the plaintiff, a reduction in force, was pretextual where the defendant did not transfer the plaintiff to an open position which the plaintiff was qualified for).

Defendant offers two unavailing arguments to counter. First, Defendant contends that Plaintiff would have been terminated from the border fence project regardless of whether he would have been hired for the project in Vancouver. Reply 8. However, that Plaintiff was terminated instead of transferred is sufficient to raise a genuine issue of material fact regarding pretext. *See Palmer*, 2011 WL 1230206, at *9. Defendant further argues that Plaintiff was

14

aware that only the President of Defendant Kiewit Corp. was authorized to enter into employment agreements, and that Plaintiff thus had to have known that the offer he claims he received was not a legitimate offer. *See* Reply 8. The signed contract Defendant refers to states, in relevant part, "I understand that no one other than the President of this Company has any authority to enter into any type of employment agreement or contract of any kind or any agreement contrary to the foregoing statements." Reply Ex. 1, Ex. C, ECF No. 14-2. That only the President has authority to enter into an employment agreement does not, by itself, prohibit the President from authorizing another, such as Surratt, from extending an offer and processing an acceptance. What's more, the quoted language does not preclude Surratt from extending an offer while preserving ultimate authority for the President to memorialize and ratify the agreement in writing. Thus, the fact that the President must sign the agreement does not undermine Plaintiff's claim that he received an offer to work in Vancouver, and thus, Plaintiff's contention that the reduction in force was pretextual.

Plaintiff has raised a genuine issue of material fact as to whether Defendant's legitimate, non-retaliatory reason for terminating Plaintiff is pretextual. Because Plaintiff has fulfilled his *McDonnell Douglas* burden with respect to his claim for retaliation, the Court **DENIES** summary judgment with respect to that claim.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion, ECF No. 9, is **GRANTED** in part and **DENIED** in part. Defendant's Motion is **GRANTED** with respect to Plaintiff's Title VII, TCHRA, and hostile work environment claims, and **DENIED** with respect to Plaintiff's claim for retaliation.

**SO ORDERED**.

**SIGNED** on this 2nd day of August, 2011.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE